UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JENNIFER LEHMAN-CLEMENTS**<br>c/o her attorneys Tittle & Perlmuter<br>2012 West 25th Street, Ste. 716<br>Cleveland, OH 44113<br><br>On behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br> v.<br><br>**STONEMOR GP LLC**<br>c/o its Statutory Agent<br>Corporation Service Company<br>50 West Broad Street<br>Suite 1330<br>Columbus, Ohio 43215<br><br> and<br><br>**STONEMOR OPERATING LLC**<br>c/o its Statutory Agent<br>Corporation Service Company<br>50 West Broad Street<br>Suite 1330<br>Columbus, Ohio 43215<br><br> and<br><br>**STONEMOR PARTNERS L.P.**<br>c/o its Statutory Agent<br>Corporation Service Company<br>50 West Broad Street<br>Suite 1330<br>Columbus, Ohio 43215<br><br>and<br><br>**STONEMOR INC.**<br>3600 Horizon Blvd., Suite 100 | CASE NO.<br><br>JUDGE<br><br>Magistrate Judge<br><br><br><br>**PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARD ACT AND STATE LAW WITH JURY DEMAND** |

  Trevose, Pennsylvania 19053    )
                     )
    Defendants.       )

  Plaintiff Jennifer Lehman-Clements, through counsel, for her Class and Collective Action Complaint against Defendants StoneMor GP LLC, StoneMor Operating LLC, StoneMor Partners LP, and Stonemor Inc. (collectively "StoneMor"), states and alleges as follows:

## INTRODUCTION

  1.  This case challenges StoneMor's practice by which it willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219; as well as the Ohio Constitution art. II, § 34a; the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03; and Ohio's Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15, .

  2.  Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join the case pursuant to § 216(b) (the "Potential Opt-Ins").

  3.  Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons, defined herein (the "Ohio Class"), who assert factually-related claims under Ohio's overtime compensation statute and Prompt Pay Act.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because each defendant conducts business within the territorial jurisdiction of this Court. Moreover, as described below, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and division.

## **PARTIES**

7. At all times relevant, Plaintiff Jennifer Lehman-Clements was a citizen of the United States and an Ohio resident within this district and division.

8. Plaintiff was employed by StoneMor as a family counselor and/or family advisor from 2010 through 2019.

9. Defendant StoneMor GP LLC is a foreign limited liability company, organized in the state of Delaware, with its principal place of business in Trevose, Pennsylvania.

10. Defendant StoneMor Operating LLC is a foreign limited liability company, organized in the state of Delaware, with its principal place of business in Trevose, Pennsylvania.

11. Defendant StoneMor Partners LP is a foreign limited partnership, organized in the state of Delaware, with its principal place of business in Trevose, Pennsylvania.

12. Defendant StoneMor Inc. is a is a foreign corporation, organized in the state of Delaware, with its principal place of business in Trevose, Pennsylvania.

13. According to records maintained by the Ohio Secretary of State, Defendant StoneMor GP LLC, Defendant StoneMor Operating LLC, and Defendant StoneMor Partners LLC share the same statutory agent for service of process which is Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

## FACTUAL ALLEGATIONS

### Defendant's Business

14. StoneMor is the second largest owner and operator of cemeteries in the United States, with 321 cemeteries and 90 funeral homes in 27 states and Puerto Rico.

15. StoneMor describes itself as "the only publicly traded death care company structured as a partnership."

16. StoneMor sells cemetery products and services at its locations on both a pre-need (before death) and at-need (at death) basis.  Its products include, among other things, burial lots, lawn and mausoleum crypts, burial vaults, caskets, memorials. StoneMor's services provide for the installation of its products.

17. StoneMor's employs "family counselors" and "family advisors" at its locations to sell its products and services.

18. Plaintiff, the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b), and all members of the Ohio Class worked for StoneMor as family counselors and/or family advisors.

### Defendants' Status as "Employers"

19. StoneMor GP LLC, StoneMor Operating LLC, StoneMor Partners LP, and StoneMor, Inc. were each an "employer" of Plaintiff, the Potential Opt-Ins, and the Ohio Class Members within the meaning of the FLSA, 29 U.S.C. § 203(d).

20. Upon information and belief, at all times relevant to this case prior to and through December 31, 2019, StoneMor Partners LP was the owner and operator of StoneMor's cemeteries and funeral homes and held ultimate control over their operations and employment practices.

21. Upon further information and belief, at all times relevant to this case prior to and through December 31, 2019, StoneMor GP, LLC was the general partner of StoneMor Partners LP, and was delegated authority to conduct StoneMor Partners LP's business of owning and operating cemeteries and funeral homes through December 31, 2019.

22. Upon further information and belief, at all times relevant to this case prior to and through December 31, 2019, StoneMor Operating LLC was a subsidiary of StoneMor Partners LP and shared with StoneMor GP, LLC certain delegated operational control over StoneMor Partners' cemeteries and funeral homes.

23. Upon further information and belief, as of December 31, 2019, StoneMor Partners LP, including its subsidiaries, and StoneMor GP, LLC merged to form StoneMor

Inc., which is now a successor to, and continues the operations of, StoneMor Partners LP, StoneMor GP, LLC, and StoneMor Operating, LLC.

24. At all times relevant, StoneMor GP LLC, StoneMor Operating LLC, StoneMor Partners LP, and StoneMor Inc. were each enterprises within the meaning of 29 U.S.C. § 203(r), and enterprises engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)

25. At all times relevant, StoneMor GP LLC, StoneMor Operating LLC, StoneMor Partners LP, and StoneMor Inc. were an "integrated enterprise" because they are so interrelated such that they can be considered a single enterprise in that they share overlapping management and control. They shared executives, which set and/or ratified the pay and timekeeping policies applicable across StoneMor.

### StoneMor's Pay Structure

26. The FLSA and Ohio law required StoneMor to pay employees for all hours they were "suffer[ed] or … permit[ted] to work." 29 U.S.C. § 203(g); O.R.C. § 4111.03(D)(1).

27. StoneMor's family counselors and family advisors earn commissions for selling the company's products and services.

28. StoneMor sets specific weekly commission goals for its family counselors and family advisors.

29. If a family counselor or family advisor fails to meet the weekly commission goal, StoneMor pays them only an hourly wage for all hours reported on their weekly timecard.

30. If a family counselor or family advisor meets or exceeds the weekly commission goal, StoneMor pays them only their earned commissions for that particular week, and no only hourly wage.

31. Under no circumstances does StoneMor pay a family counselor or family advisor both an hourly wage and earned commissions in any particular workweek. Said differently, StoneMor's family counselors and family advisors are paid either an hourly wage or their earned commissions for any particular workweek, dependent on whether they fall short of the weekly commission goal, or, they meet/exceed the weekly commission goal.

## Defendants' Failure to Record All Hours Worked

32. StoneMor paid its family counselors and family advisors according to their working time recorded on paper timecards and/or electronic timekeeping systems.

33. StoneMor knew that the demands of family counselors' and family advisors' jobs required many more than 40 working hours per week, and, in many cases, mandated that family counselors and family advisors work more than 40 hours per week.

34. Yet, StoneMor instructed its family counselors and family advisors to report fewer hours on their timecards and/or in the company's electronic timekeeping system than actually worked, so as to reduce or eliminate recorded compensable regular and overtime hours.

35. Per StoneMor's mandate, Plaintiff, the Potential Opt-Ins, and the Ohio Class members reported fewer hours on their weekly timekeeping records than they actually worked.

7

## StoneMor Failed to Compensate for all Hours Worked, Failed to Pay Minimum Wage, and Failed to Pay Overtime Premiums

36. StoneMor knew that Plaintiff, the Potential Opt-Ins, and the Ohio Class members were working more hours than reported, but nevertheless paid them only based upon the hours indicated on their weekly timecards and electronic time records.

37. Thus, in weeks where Plaintiff, the Potential Opt-Ins, and the Ohio Class were paid on an hourly basis, they were not paid all wages earned when due, and were often deprived of minimum wage and/or overtime premiums for those compensable hours worked but not recorded in timekeeping records.

38. Further, upon information and belief, for the weeks that StoneMor paid Plaintiff, the Potential Opt-Ins, and the Ohio Class only commissions, StoneMor classified them as "exempt" from the FLSA's and Ohio's overtime requirements pursuant to the FLSA's retail and service establishment exemption, 29 U.S.C. § 207(i).

39. In order for StoneMor to avail itself of that exemption, commissions paid to Plaintiff, the Potential Opt-Ins, and the Ohio Class' had to exceed one-and-one-half times the minimum wage for all hours worked.

40. However, because StoneMor instructed its family advisors and family counselors to report fewer hours on their timecards than they actually worked, StoneMor regularly improperly classified those employees as "exempt," in weeks where they did not meet the requirements for that exemption.

41. As a result, in such weeks, Plaintiff, the Potential Opt-Ins, and the Ohio Class members were deprived of overtime pay at a rate of one-and-one half times their regular rates of pay.

**StoneMor's Timekeeping and Pay Practices as Applied to Jennifer Lehman-Clements**

42. Plaintiff Jennifer Lehman-Clements was subjected to the practices described in Paragraphs 21 through 36 on a near-weekly basis.

43. Plaintiff Jennifer Lehman-Clements' usual, StoneMor-mandated schedule consisted of alternating workweeks of at least 50 and 53 hours.

44. Every week, StoneMor dictated that she work at least eight hours each day Monday through Friday, at least six hours on Saturdays, and at least four hours during once-a-week rotating evening "call nights."

45. In addition, every other Sunday, StoneMor required that Plaintiff work at least three hours.

46. Moreover, the demands of the job were so high that Plaintiff oftentimes worked through lunch and before and after her scheduled shifts.

47. All told, Plaintiff rarely worked under 50 hours per week for StoneMor.

48. Yet, in accordance with StoneMor's policy, she was not permitted to report all of her compensable hours on her timesheets and electronic timekeeping records.

49. As a result, and in accordance with StoneMor's policy, her timesheets and electronic time records do not reflect her total number of compensable, working hours she worked each week.

50. Plaintiff attempted on numerous occasions to report all of her hours worked on her timesheet. On each such occasion, the timesheet was returned to her by StoneMor management and/or administrators with the mandate to reduce the reported hours to 40 or fewer.

51. Even though StoneMor knew, or had reason to know, that Plaintiff had worked more hours than she was permitted to record and report on her timesheets and electronic time records, StoneMor based her compensation on the timesheets and electronic records.

### The Willfulness of Defendant's Violations

52. Defendant knew that Plaintiff, the Potential Opt-Ins, and the Ohio Class Members were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a workweek under both federal and state law, or acted in reckless disregard for whether they were so entitled.

53. Since at least 2012, StoneMor has known that its policy of requiring family counselors and advisors to report fewer hours than they actually worked was contrary to law.

### The Maryland Case

54. In 2012, StoneMor was sued in the United States District Court, District of Maryland, in the case captioned *Parker, et al. v. StoneMor GP, et al.*, MD. No. 1:2012-cv-223.

55. The plaintiffs in that action, who also worked for StoneMor as family counselors and family advisors, alleged that they were instructed to put fewer hours on their timecards than they actually worked, consequently denying them regular and overtime wages.

56. The action was conditionally certified and 31 of StoneMor's family counselors and family advisors joined the case.

57. StoneMor settled the lawsuit, ultimately agreeing to pay $235,000 to the family counselors and family advisors.

## The California Case

58. The following year, in 2013, StoneMor was again sued in California in the case captioned *Sarkisov v. StoneMor Partners LP, et al.*, N.D. Cal. No. 3:2013-cv-4834.

59. Like those in the Maryland action, the plaintiffs in the California action alleged that StoneMor instructed its family counselors and family advisors to put fewer hours on their timecards than they actually worked, consequently denying them regular and overtime wages.

60. StoneMor agreed to settle the California action by agreeing to pay $850,000 to 511 of its family counselors and family advisors.

## The Ohio Case

61. In 2014, StoneMor was sued in this Court, wherein the plaintiffs brought nearly identical allegations to those herein – that StoneMor instructed its family counselors and family advisors to put fewer hours on their timecards than they actually worked. The case was captioned *Brodzenski v. StoneMor Partners, L.P., et al.*, N.D. Ohio No. 1:14-cv-2517.

62. Judge James S. Gwin conditionally certified the FLSA class on a nationwide basis. Six hundred and fifty-one of StoneMor's family counselors and family advisors joined the case.

63. After the completion of merits discovery, StoneMor moved to decertify the class. In denying StoneMor's request, Judge Gwin found that the plaintiff had

11

"provide[d] enough evidence that the class members 'suffer[ed] from a single, FLSA-violating policy . . . ."

64. Two months later, StoneMor agreed to by paying the family counselors and advisors a total of $2,328,000.

## COLLECTIVE ACTION ALLEGATIONS

65. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

66. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability "prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of themselves and other employees similarly situated. "

67. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to StoneMor's FLSA violations consist of:

> All family counselors and family advisors employed by StoneMor GP LLC, StoneMor Operating LLC, and/or StoneMor Partners LP during the period three years preceding the commencement of this action to the present.

68. Such persons are "similarly situated" with respect to StoneMor's FLSA violations in that all were subject to and injured by StoneMor's unlawful timekeeping and payroll practices, and all have the same claims against StoneMor for unpaid minimum wages and overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

69. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary, such that all such persons may be sent a Court-

authorized notice informing them of the pendency of the action and giving them the opportunity to "opt in."

70.  Upon information and belief, the number of similarly-situated persons exceeds 4,000 persons.

## CLASS ACTION ALLEGATIONS

71.  Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

72.  Plaintiff brings this case on behalf of herself and other members of a proposed Ohio Class, defined as:

> All family counselors and family advisors employed by StoneMor GP LLC, StoneMor Operating LLC, and/or StoneMor Partners LP during the period three years preceding the commencement of this action to the present.

73.  The Ohio Class is so numerous that joinder of all Class Members is impracticable. Plaintiff avers, upon information and belief, that the Ohio Class totals in excess of 200 employees. The number of Class Members as well as their identities are ascertainable from records StoneMor has maintained, and was required to maintain, pursuant to the FLSA and Ohio law.  29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. art. II, § 34a.

74.  Questions of law or fact common to the Ohio Class predominate, including but not limited to:

> a) Whether StoneMor required Plaintiff and other Class Members to perform unpaid work off-the-clock.

13

    b) Whether StoneMor knew or should have known that Plaintiff and other Class Members were working off-the-clock, but still failed to pay them.

    c) Whether StoneMor violated Ohio law by failing timely to pay Plaintiff and other Class Members for all hours worked on a semi-monthly basis, and never rectifying that failure to pay in a timely manner.

    d) Whether StoneMor violated Ohio law by failing to pay Plaintiff and other Class Members, in every workweek, at least the minimum wage set forth in Ohio Const. art. II, § 34a for all hours worked.

    e) Whether StoneMor deprived Plaintiff and other Class Members of overtime compensation at one and one-half times their "regular rate" for hours worked in excess of forty hours in a workweek.

75. Plaintiff's claims are typical of the claims of other members of the Ohio Class. Plaintiff's claims arise out of the same uniform course of conduct by StoneMor, and are based on the same legal theories, as the claims of other Class Members.

76. Plaintiff will fairly and adequately protect the interests of the Ohio Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other Class Members. Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Class in this case.

77. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine StoneMor's liability to the class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
**(FLSA Minimum Wage and Overtime Violations)**

79. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

80. Plaintiff bring this claim for violation of the FLSA's overtime provisions on behalf of themselves and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent to be a party to this action pursuant to § 216(b) are filed herewith, as are the consents of Victoria Bozic, Sandra Dennis-Greenberg, Christine De Young, and Thaddeus Monkowski.

81. The FLSA required StoneMor to pay its non-exempt employees at least the minimum wage, and to pay them overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

82. StoneMor's unlawful timekeeping and pay practices, more fully described above, deprived Plaintiff and the Potential Opt-Ins of minimum wages for all hours

15

worked and of requisite overtime compensation for all hours worked in excess of forty hours in a workweek.

83. By engaging in these practices, StoneMor willfully violated the FLSA and regulations thereunder that have the force and effect of law.

84. As a result of StoneMor's violations of the FLSA, Plaintiff and the Potential Opt-Ins were injured in that they did not receive minimum wages and overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
**(Ohio Overtime Violations)**

85. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

86. Plaintiff brings this claim for violation of the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, on behalf of herself, the Potential Opt-Ins, and the Ohio Class Members.

87. At all times relevant, each defendant was an employer covered by the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03.

88. StoneMor violated the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, by failing to pay all overtime compensation due to its family counselors and family advisors when owed and due.

16

89. StoneMor's violations of Ohio Rev. Code Ann. § 4111.03 injured Plaintiff, the Potential Opt-Ins, and the Ohio Class Members in that they did not receive overtime compensation due to them pursuant to that statute.

90. Ohio Rev. Code Ann. § 4111.10(A) provides that StoneMor, having violated § 4111.03, is "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] by the employer, and for costs and reasonable attorney's fees as may be allowed by the court."

## COUNT THREE
### (Ohio Minimum Wage Violations)

91. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

92. The Ohio Fair Minimum Wage Amendment ("OMFWA"), Ohio Constitution art. II, § 34a, required the StoneMor to pay its employees at least the minimum wage.

93. StoneMor failed to pay minimum wages to Plaintiff, the Opt-Ins, and the Ohio Class Members, in violation of the OMFWA.  The OMFWA entitles them to "equitable and monetary relief" including "two times the amount of the back wages."

## COUNT FOUR
### (Ohio Prompt Pay Act Violations)

94. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

95. Ohio's Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15(A), provides that "[e]very employer doing business in this state shall, on or before the first day of each

month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

96. StoneMor failed to pay all wages due under Ohio's Prompt Pay Act to Plaintiff and the Ohio Class Members entitles them to the unpaid wages, plus "an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater."

## COUNT FIVE
### (Ohio Record-Keeping Violations)

97. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

98. The OMFWA required StoneMor to maintain accurate and complete records of employees' time.  Ohio Const. art. II, § 34a.

99. StoneMor violated the OMFWA's record-keeping requirement by failing to maintain accurate and complete records of its family counselors and family advisors working time.

100. As a result of StoneMor's record-keeping violations, Plaintiff and the Ohio Class Members were injured in that StoneMor does not have accurate and complete records of their working hours.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Conditionally certify this case as an FLSA "collective

    action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Ohio Class;

C.    Enter judgment against Defendants and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Ohio Class;

D.    Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Ohio Class in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

E.    Award Plaintiff pre- and post-judgment interest; and

F.    Award Plaintiff her costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

    Respectfully submitted,

    s/ Scott D. Perlmuter
    Scott D. Perlmuter (0082856)
    2012 West 25th Street, Suite 716
    Cleveland, OH 44113
    216-308-1522
    Fax: 888-604-9299
    scott@tittlelawfirm.com

    /s/ Joshua B. Fuchs
    Joshua B. Fuchs (0087066)
    **THE FUCHS FIRM LLC**
    3961 Silsby Road
    University Heights, Ohio 44113
    216-505-7500 [phone and fax]
    josh@fuchsfirm.com

    /s/ James J. Hux

        James J. Hux (0092992)
        **HUX LAW FIRM, LLC**
        3 Severance Circle #18147
        Cleveland Heights, Ohio 44118
        Phone:    (937) 315-1106
        Fax:    (216) 359-7760
        Email:    jhux@huxlawfirm.com

        Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

        s/ Scott D. Perlmuter
        Scott D. Perlmuter (0082856)